**Jeffrey S. KASSEL, Ph.D.**

v.

**UNITED STATES VETERANS ADMINISTRATION; Thomas Mulvey, Paul Lamberti, Robert Cisler, in their individual and official capacities; United States of America.**

**Civ. No. 87–217–D.**

United States District Court,
D. New Hampshire.

Feb. 4, 1988.

---

Robert M. Larsen, Concord, N.H., for plaintiff.

Gretchen Leah Witt, Asst. U.S. Atty., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Plaintiff Jeffrey S. Kassel, Ph.D., brings this federal question action against the United States of America, the United States Veterans Administration ("VA"), and three idividual defendants, Thomas Mulvey, Paul Lamberti, and Robert Cisler, in their personal and official capacities as employees of the VA. Plaintiff alleges that the individual defendants took action, subsequent to a misquotation of plaintiff in an article in *USA Today*, which deprived him of federal constitutional and statutory rights and, in pendent claims, which violated his rights under New Hampshire law. Plaintiff invokes subject matter jurisdiction under the Privacy Act of 1974, 5 U.S.C. § 552a(g), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1331, 1343, and 1346(b), and by way of the Court's pendent jurisdiction.

Two motions are before the Court. The individual defendants have moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of Counts III and IV, which claim, respectively, a deprivation of plaintiff's constitutional rights of privacy and free speech, and Counts V and VI, which allege, respectively, pendent state claims for invasion of privacy and defamation. Defendant United States of America has moved for dismissal of Count II (FTCA claim) under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., or, in the alternative, for summary judgment under Rule 56, Fed.R.Civ.P.

The parties have submitted memoranda of law, accompanied by affidavits and exhibits. Because there has been ample opportunity for the parties to respond to the representations, and the Court has con-

sidered the documentary evidence, the Court disposes of the motions as motions for summary judgment. Rule 12(b), Fed.R. Civ.P.; *Moody v. Town of Weymouth*, 805 F.2d 30, 31 (1st Cir.1986).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. The burden is upon the moving party to establish the lack of a genuine, material factual issue, *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir. 1986), and the Court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences to be discerned from the evidence, *Ismert & Assoc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 537 (1st Cir.1986).

*Factual Background*

Plaintiff is a psychologist who has been employed by the VA since 1971 and since 1977 has worked at the VA Medical Center in Manchester, New Hampshire. Complaint ¶ 9. On April 26, 1985, *USA Today* misquoted remarks Dr. Kassel had made about Vietnam Veterans. The portion of the quotation at issue is:

It's amusing that vets feel they are the victims when the Vietnamese had the napalm and ... bombs dropped on them. *Id.* ¶ 12.

On May 8, 1985, the VA formed a Board of Inquiry "to investigate the impact of Dr. Kassel's remarks" in the *USA Today* article. Plaintiff alleges that as a result of this inquiry, despite knowing he had been misquoted, the VA decided to fire him. The VA, through defendant Lambert, issued a "newsletter" dated June 7, 1985, to the press regarding Dr. Kassel's removal. *Id.* ¶ 11. The newsletter stated:

PROPOSED REMOVAL OF KASSEL— Dr. Jeff Kassel, clinical psychologist at the Manchester V.A. Medical Center[,] has received notice from Dr. Eduardo Anzola, Chief of Staff[,] of intent to remove him from employment. The action

does not mean that a final decision has been made to remove Kassel. As a federal employee, Kassel has certain procedural rights which will allow him to contest his proposed removal. Anzola has initiated the removal action because, in his view, Kassel can no longer effectively perform his function as a Psychologist, having compromised his ability to establish a therapeutic relationship with patients.

Plaintiff alleges that on the same date defendants released confidential documents to the press from his personnel file. *Id.* ¶ 38.

On June 10, 1985, *USA Today* printed a correction of the April 26 article, which stated that the quote set forth above was only a part of the statement Dr. Kassel gave. The article went on to state:

In fact, he [Dr. Kassel] was quoting what he'd read in another news story, which said: 'Vietnamese Vietnam Veterans think it's amusing that American Vets feel they are the victims when the Vietnamese had the Napalm and ... bombs dropped on them.'

*Id.* ¶ 12.

On June 12, the defendants made public a letter of proposed removal to Dr. Kassel, and on June 16, the VA, through defendant Mulvey, allegedly released to the press information from Dr. Kassel's confidential personnel file, including the fact that he had been fired previously, information which was expunged from his personnel file. *Id.* ¶ 40. The information released to the press was allegedly published in the *Manchester Union Leader*, the *Boston Globe*, and other print and broadcast media throughout New Hampshire. *Id.* ¶¶ 50, 53.

Plaintiff asserts that on June 13 and 15, after the correction appeared, defendant Cisler made defamatory statements to the press which in substance said he did not believe the correction made a difference— that the confidence and trust of the Vietnam Veteran community in Dr. Kassel had been destroyed. *Id.* ¶ 70. On July 17, 1985, the VA withdrew its intent to fire Dr. Kassel, the Director of the Medical Center stating that the *USA Today* correction

"changed the content of [Dr. Kassel's] statement to the point that the proposed letter of removal was in error." *Id.*

After the intent to fire Dr. Kassel was withdrawn, plaintiff alleges that the defendants decided to transfer Dr. Kassel to the VA Medical Center in San Juan, Puerto Rico, against his will. That transfer was withdrawn; however, plaintiff alleges that on or about October 1, 1985, the defendants decided to transfer him to Bedford, Massachusetts, again against his will. *Id.* ¶ 14.

*Individual Defendants' Motion for Summary Judgment Constitutional Claims*

The individual defendants move for dismissal of Count III and IV, which allege deprivation of plaintiff's constitutional rights of privacy under the Ninth and Fourteenth Amendments to the United States Constitution and free speech under the First and Fourteenth Amendments. As grounds, defendants argue that plaintiff has failed to state valid claims and, in any event, that they are immune from liability under the doctrine of qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The determination of whether the law was "clearly established" at the time the action occurred is a legal determination which is appropriate for summary judgment. *Id.* It is not sufficient for the Court to ascertain in a general sense that the right existed; the Court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate that his actions would violate that right. *Borucki v. Ryan,* 827 F.2d 836, 838 (1st Cir.1987).

*Right of Privacy*

In Count III, plaintiff alleges that two United States Supreme Court cases establish that defendants' dissemination of confidential information from his personnel file violated his constitutional right of privacy.

Plaintiff's Objection at 10 (citing *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)); *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

The First Circuit recently determined that it was not clearly established in 1983 that a government official's dissemination to the press of a confidential psychiatric evaluation violated constitutionally protected privacy interests. *Borucki, supra,* 827 F.2d at 848. The First Circuit noted that in *Whalen* the Supreme Court had specifically refrained from deciding whether the right of privacy is implicated when private data collected by the Government is publicly disclosed. *Id.* at 842 (citing *Whalen, supra,* 429 U.S. at 605–06, 97 S.Ct. at 879). The First Circuit also stated that the *Nixon* decision's applicability to privacy determinations is only clear in a Fourth Amendment context. *Id.*

█ Because the First Circuit determined that the United States Supreme Court had not established the asserted privacy right, the court reviewed lower court decisions that had considered the issue. In deciding that the asserted right of privacy was not clearly established, the First Circuit relied on the fact that there was a split in the circuits in early 1983 as to whether the right of privacy includes a general right of nondisclosure of personnel records. *Id.* at 848 (*comparing, e.g., J.P. v. De Santi,* 653 F.2d 1080, 1089 (6th Cir.1981) *with Fadjo v. Coon,* 633 F.2d 1172 (5th Cir. 1981)). This split in the Circuits was not reconciled by 1985, when the asserted cause of action arose in the instant case.

Based on *Borucki,* the Court finds that plaintiff's constitutional right of privacy in his confidential personnel records was not clearly established when the cause of action allegedly arose; therefore, summary judgment for defendants regarding Count III is granted, as they are immune from suit under the doctrine of qualified immunity.

*First Amendment*

Plaintiff asserts in Count IV that defendants deprived him of his First Amendment

right to free speech when they attempted to fire him and transferred him in retaliation for the expression of his opinion in the *USA Today* article. Complaint ¶¶ 58–64. Defendants move the Court to dismiss Count IV on the ground that they are immune from suit because their conduct did not violate clearly established rights.

In *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the United States Supreme Court articulated a balancing test to determine the extent to which a public employee's freedom of speech is constitutionally protected. The court weighed the interests of the individual in commenting upon matters of public concern with the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* at 563, 88 S.Ct. at 1731. The threshold question in applying this test is whether plaintiff's statements to *USA Today* may be "fairly characterized as constituting speech on a matter of public concern", i.e., speech relating to any matter of political, social, or other concern of the community. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983).

■ The Court finds that plaintiff's statements in *USA Today* dealt with a matter of public concern. His comments related to attitudes regarding Vietnam Veterans, a political and social issue subject to constant public debate in the past three decades of this nation's history. The attitude toward Vietnam Veterans is a matter as to which "debate ... [must] be uninhibited, robust and wide open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). Dr. Kassel's statements, as a part of the public debate, are entitled to First Amendment protection.

Thus, the issue becomes whether, at the time the personnel actions were taken against the plaintiff in 1985, defendants were objectively reasonable in thinking they could discharge or transfer plaintiff for making his comments to the press.

In analyzing the competing interests of employers and employees in determining the extent to which employee's speech is constitutionally protected, the *Pickering* court considered (1) whether the allegedly protected activity is directed against those with whom the employee is regularly in contact such that it might impede harmony among co-workers or the ability of supervisors to maintain discipline, and (2) whether the employee's activity has a detrimental impact on those with whom he must maintain personal loyalty and confidence to fulfill job responsibilities. *McDonough v. Trustees of UNH*, 704 F.2d 780, 784 (1st Cir.1983) (citing *Pickering, supra*, 391 U.S. at 569–73, 88 S.Ct. at 1735–37).

The State's burden in justifying a discharge varies depending upon the nature of the expression. *Connick v. Myers, supra*, 461 U.S. at 150, 103 S.Ct. at 1691. In *Connick*, the plaintiff had circulated a questionnaire to fellow employees which, although relating primarily to discipline and morale in the office, contained one question which involved a matter of public concern: whether other employees felt compelled to work in political campaigns. *Id.* 103 S.Ct. at 1691. The Supreme Court adopted the district court's findings that the questionnaire had not impeded the plaintiff's ability to perform her job as a district attorney, but that the plaintiff's superiors had considered her actions an act of insubordination which interfered with working relationships. The Court upheld her dismissal, stating: "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* 461 U.S. at 151–52, 103 S.Ct. at 1692. However, the court cautioned that a stronger showing by the employer might be necessary if the employee's speech "more substantially involved matters of public concern." *Id.* at 152, 103 S.Ct. at 1693.

In the instant case, Dr. Kassel's comments more substantially involved an issue of public concern than did the questionnaire in *Connick*. Although the *Connick* and *Pickering* decisions do not establish the exact showing of governmental interest defendants would be required to make to

justify their personnel actions against Dr. Kassel, *Connick* clearly establishes that, because a matter of greater public concern is involved, the showing must be greater than that made in the *Connick* case.

Defendants argue essentially that close working relationships were at stake. They state that because plaintiff gives psychological treatment to Vietnam Veterans, and because plaintiff's statements "denigrated" Vietnam Veterans, defendants could reasonably have concluded that plaintiff's performance of his duties would be impeded by his "statements and subsequent events". Memo at 14. Defendants therefore argue that they were objectively reasonable in threatening to discharge or transfer plaintiff for his statements.

■ In so arguing, defendants appear to focus on the original misquotation and the community reaction to it. Defendants have not made a showing that they were objectively reasonable in believing that plaintiff's working relationships would suffer because of his *actual* statement to the press—the statement quoted in the *USA Today* correction of June 10. Nor have defendants asserted that they considered Dr. Kassel's act of speaking to the press an act of insubordination, as in *Connick.* Instead, defendants essentially assert that close working relationships were threatened, not by plaintiff's act of speaking, but by the content of the *misquoted* speech. To say that government employers could reasonably believe they could take adverse personnel actions against an employee for misquotations in newspaper articles would essentially chill the employee's fundamental right to speak out on public issues of which he has personal knowledge, for the employee would bear the burden of the risk of misquotation. A reasonable official could anticipate that the threat of dismissal for a misquotation would violate First Amendment rights. *See Pickering, supra,* 391 U.S. at 574, 88 S.Ct. at 1737 (absent proof of false statements knowingly or recklessly made, the employee's exercise of his right to speak on an issue of public importance may not furnish the basis for

his dismissal); *see also Borucki, supra,* 827 F.2d at 838.

Therefore, because it was clearly established in 1985 that defendants must show a governmental interest greater than that set forth in *Connick* to take personnel actions against an employee for speaking out on a matter of public importance, and because defendants have not met this burden, the Court does not recognize the qualified immunity defense as to the First Amendment claim in Count IV.

Defendants also move to dismiss plaintiff's First Amendment claim on the basis that his only remedy is through the civil service system. Plaintiff asserts that defendants are liable for their alleged deprivation of plaintiff's First Amendment rights under the authority of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Constitution supports a private cause of action for damages against a federal official). Defendants assert that a more recent Supreme Court case precludes a *Bivens*-type claim when a plaintiff is provided with adequate administrative remedies through the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111, *et seq.* (codified in various sections of Title 5, United States Code). Defendants' Memorandum at 7 (citing *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)).

In *Bush,* the Supreme Court declined to permit a federal employee to bring a *Bivens*-type action against his supervisors for alleged deprivation of First Amendment rights. The Court held that the CSRA provided a comprehensive scheme for the redress of adverse personnel actions and therefore constituted a "special factor counseling hesitation" in implying a *Bivens* remedy. *Id.* at 378, 103 S.Ct. at 2411. In *Bush,* the plaintiff was dismissed from employment; therefore, the action against him was an "adverse personnel action", 5 U.S.C. § 7512(1), which allowed him to pursue a direct appeal to the Merit Service Protection Board ("MSPB"), 5 U.S.C. § 7513(d), and to seek judicial review of an

adverse decision by that Board, 5 U.S.C. § 7703(a)(1) and (b)(1).

In contrast, the instant case involves an unwanted transfer. Transfer reassignments do not constitute "adverse personnel actions" which an employee may appeal to the MSPB. *Manning v. MSPB,* 742 F.2d 1424 (Fed.Cir.1984). Under CSRA, such a transfer may be characterized as a "prohibited personnel practice", but as such, does not entitle plaintiff to the same administrative recourse as was available to the plaintiff in *Bush.* Under CSRA, an employee may complain of a prohibited personnel practice to the Office of Special Counsel. 5 U.S.C. § 1206(a)(1). In the alternative, if the employee is covered by a collective bargaining agreement, he may grieve the practice through arbitration. 5 U.S.C. § 7121(d). Dr. Kassel argues that because the same procedures are not available to him as are available to a dismissed employee, *Bush* is not applicable.

The question presented to the Court is whether plaintiff as a federal employee with limited remedies under the CSRA has a right to bring a *Bivens* action to redress an alleged deprivation of constitutional rights. The parties have correctly noted the existence of a sharp split of authority on this issue in the circuit courts of appeals.

The Fourth, Fifth, and Sixth circuits hold that such actions are foreclosed by *Bush. See, e.g., Pinar v. Dole,* 747 F.2d 899, 905 (4th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Braun v. United States,* 707 F.2d 922 (6th Cir.1983); *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982).[1] In contrast, the Seventh, Eighth, and Ninth Circuits have held that when a federal employee's only remedy under CSRA is a complaint to the Office of Special Counsel, the courts may imply an additional *Bivens* remedy. *See Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986), *petition for cert. pending,* 55 U.S.L.W. 3794 (U.S. May 13, 1987) (No. 86–1813); *McIntosh v. Weinburger,* 810 F.2d 1411 (8th Cir.), *petition for cert. pending,* 56 U.S. L.W. 3184 (U.S. Sept. 2, 1987) (No. 87–377); *Egger v. Phillips,* 710 F.2d 292, 297–99 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). These courts reason, generally, that because the Special Counsel's right to investigate complaints and to seek corrective action is discretionary, because the injured employee has no right to appeal to the MSPB or to judicial review, and because the MSPB may not award affirmative relief to the employee, the structure does not provide any "meaningful remedy" to redress deprivation of constitutional rights. *See Kotarski, supra,* at 1348; *McIntosh, supra,* at 1435; *see also* 5 U.S.C. §§ 1206(h), 1207.

Although the First Circuit has not yet had the opportunity to enter the fray of the CSRA debate, it touched on the issues in a related decision. In *Dugan v. Ramsay,* 727 F.2d 192 (1st Cir.1984), the lower court had dismissed a complaint brought by a plaintiff who had been denied government employment, holding that the plaintiff had not exhausted his administrative remedies. *Id.* at 193. The lower court had ruled that plaintiff should have petitioned the Special Counsel for redress of the allegedly "prohibited personnel practice", 5 U.S.C. § 1206. In reversing the lower court, the First Circuit held that the lower court had the authority to review the personnel action under the Administrative Procedures Act ("APA") because the APA states that "final agency action for which there is no other adequate remedy in a court [is] ... subject to judicial review." *Id.* at 194 (citing 5 U.S.C. § 704).

In so ruling, the court specifically rejected the Government's argument that because CSRA provides for MSPB review of most personnel actions and creates judicial review of MSPB decisions (remedies not available in *Dugan* ), there was an implied congressional prohibition against court review of final personnel decisions that do not find their way to the MSPB. *Id.* The court stated that the Government's argu-

**1.** The courts in *Broadway* and *Braun* relied on the Fifth Circuit decision in *Bush v. Lucas,* 647 F.2d 573 (5th Cir.1981), which was later affirmed by the Supreme Court, *Bush, supra,* 462 U.S. 367, 103 S.Ct. 2404.

ment "runs counter to the strong presumption in the law that favors reviewability and almost never implies statutory preclusion of review from congressional silence." *Id.* at 195.

█ The First Circuit's opinion in *Dugan,* although not directly on point, reflects an affinity with the position of the Seventh, Eighth, and Ninth Circuits regarding the need for court review to assure adequate recourse for an alleged constitutional deprivation when the employee, because of his status, does not have the CSRA remedies which were available to the plaintiff in *Bush.* The instant case illustrates the limitations of an employee's recourse through CSRA when he complains of a "prohibited personnel practice." Dr. Kassel originally sought review of his transfer through the Office of Special Counsel, but the Special Counsel, in his discretion, declined to review the case. Affidavit of Timothy E. Kruschek, ¶ 7 and Attachment 2. With no opportunity to present his case and no right to appeal the Special Counsel's decision, Dr. Kassel had no meaningful recourse to redress his alleged deprivation of constitutional rights. *See Kotarski, supra,* 799 F.2d at 1348.

Defendants assert that plaintiff made a meaningful choice under 5 U.S.C. § 7121(d) to forego his statutory remedies (appeal to the Office of Special Counsel) by selecting arbitration. The Court disagrees. Because Dr. Kassel could not appeal the Special Counsel's refusal to hear his case, his only option was arbitration. And although through the arbitration process Dr. Kassel had a forum to present his case and a right to enforce relief had a violation been shown, he had no right to judicial review of the adverse decision he received. *See* 5 U.S.C. § 7123.

In sum, the Court adopts the First Circuit's strong preference for the recourse of judicial review, even when Congress has not explicitly authorized that remedy in a personnel context. *Dugan, supra,* 727 F.2d at 194. Further, the Court agrees with the circuits which have held that recourse to the Special Counsel is not adequate to redress alleged deprivation of con-

stitutional rights when it forecloses rights of appeal, including the right to judicial review. *See Kotarski, supra.* For these reasons, the Court finds that plaintiff may bring his claim for alleged deprivation of his First Amendment rights in this court, and defendants' motion for summary judgment of Count IV is denied.

### Pendent State Claims

The individual defendants have moved for a dismissal of the pendent state claims on the ground that defendants are absolutely immune from common-law tort claims.

Federal officials charged with committing common-law torts are absolutely immune from suit if the conduct in question falls within the "outer perimeter of [the official's] ... line of duty." *Ricci v. Key Bancshares of Maine,* 768 F.2d 456, 462 (1st Cir.1985) (citing *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959)). The scope of an official's authority is read expansively in a common-law tort suit. *Salvador v. Meese,* 641 F.Supp. 1409, 1417 (D.Mass.1986) (citing *Ricci, supra,* 768 F.2d at 462). The conduct need only be more or less connected to "'general matters committed by law to [the official's] control or supervision.'" *Id.* (quoting *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896)). The official's motives are irrelevant to the analysis; even malicious conduct does not deprive a government agent of the immunity defense. Instead, the Court must determine whether the conduct is of a *"kind* which, if done for legitimate purposes, falls within the scope of the official's authority." *Ricci, supra,* 768 F.2d at 462 (citing *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949) (emphasis in original)).

### Defamation

Plaintiff alleges that defendant Cisler defamed him in two statements made to the press after the correction appeared in *USA Today.* The gist of both statements was that the correction did not make a difference—that even the revised statement was damaging to Dr. Kassel's relationship with his clients. *See* Complaint ¶ 70.

■ Even assuming that Mr. Cisler's statements were defamatory and maliciously motivated, the issuance of statements to the press did not fall outside of his authority. Plaintiff acknowledges that defendant's job description as Associate Medical Center Director authorizes him to handle public relations and personnel matters, Plaintiff's Memo at 3–4; *see* Defendants' Memorandum, Exhibit B, Attachment 3; thus, making statements to the press was a proper exercise of Mr. Cisler's discretion. As the United States Supreme Court stated in *Barr v. Matteo, supra,* 360 U.S. at 575, 79 S.Ct. at 1341, "It would be an unduly restrictive view of the scope of the duties of a policy-making executive official to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty."[2]

Plaintiff asserts that defendant's statements were part of an overall scheme to illegally remove him from the VA. Memo at 5–6. However, as stated above, defendant's motives are irrelevant to the Court's inquiry. Issuing statements to the press regarding the agency's view of a highly publicized situation is conduct which falls within defendant's authority. Because defendant Cisler is absolutely immune from the defamation claim, defendants' motion for summary judgment on Count VI is granted.

*Invasion of Privacy*

Plaintiff alleges that the defendants invaded his privacy by releasing "private, privileged and confidential materials in an effort to offend him publicly and place him in a false light." Complaint ¶ 66. Specifically, plaintiff alleges that on June 7, 1985, the defendants, without his permission, released documents from his employment record, including a Board of Inquiry report, and that defendant Mulvey released to the press information expunged from Dr. Kassel's confidential personnel record that he previously had been fired by the VA. *Id.* at ¶¶ 19, 23.

The parties do not dispute that the defendants had the discretion to deal with personnel and public relations matters in the course of their employment. *See* Motion to Dismiss on Behalf of the Individual Defendants Thomas Mulvey, Paul Lamberti and Robert Cisler, Exhibit B (job descriptions of defendants). Plaintiff argues, however, that because their job descriptions do not authorize tortious activity, defendants acted beyond the perimeter of their authority.

■ The fact that activity is tortious does not negate the absolute immunity defense; to so interpret the defense would be to create an exception that would swallow the rule. *Krohn v. United States,* 742 F.2d 24, 30 (1st Cir.1984) (citing *Barr, supra,* 360 U.S. at 572, 79 S.Ct. at 1340). However, the absolute immunity defense is limited to the extent that the means adopted by an official in achieving a legitimate end are "manifestly or palpably beyond his authority." *Id; see also Bishop v. Tice,* 622 F.2d 349 (8th Cir.1980) (supervisor's absolute immunity for discharging subordinate is lost when supervisor adopts means beyond the outer perimeter of his authority).

■ Although defendants had the discretion to deal with personnel and public relations matters, the Court finds that there is a genuine issue of material fact as to whether defendants exceeded their authority, *not* because of the alleged tortious nature of the activity, but because their discretion to release confidential personnel information may have been removed by federal statute. Section (i)(1) of the Privacy Act, 5 U.S.C. § 552a, subjects an agency employer to criminal penalties if he willfully discloses protected material to any person not authorized to receive it. The Court has not been apprised of exactly what information was allegedly released. If the information fell within the parameters of the Privacy Act, defendants did not have

2. In referring to *Barr* in a subsequent decision, the Supreme Court stated that *Barr* "extended absolute immunity to an officer who was authorized to issue press releases, who was assumed to know the press release he issued was false and therefore was deliberately misusing his authority." *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978).

the discretion to release it.[3] Defendants' release of such information could not be said to be the kind of conduct which, even if done for the legitimate purpose of dealing with the public relations aspect of a highly publicized personnel action, falls within the scope of their authority. *Ricci, supra*, 768 F.2d at 462. Inasmuch as there are genuine issues of material fact in dispute as to this point, defendants' motion for summary judgment as to Count V is denied.

### Defendant United States of America

Defendant United States moves the Court for summary judgment on Count II of the complaint, which states a claim for intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* The FTCA was enacted as a limited waiver of the federal government's sovereign immunity for torts committed by employees. *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The United States shall be liable:

> for injury ... caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. First, defendant argues that because there is a "substantial question" of whether plaintiff's alleged injuries are compensable under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq.*, his FTCA action is barred.

FECA establishes a worker's compensation program for federal employees. *Reep v. United States*, 557 F.2d 204, 207 (9th Cir.1977). The Act is the exclusive means by which employees may recover for employment-related injuries. *Levine v. United States*, 478 F.Supp. 1389, 1391 (D.Mass. 1979). However, once it is determined that there is no "substantial question" of FECA coverage, the plaintiff may bring his claim under the FTCA. *Id.*

In this case, plaintiff's initial FECA claim was denied by the district office of the Department of Labor. Plaintiff requested a hearing on his claim pursuant to 5 U.S.C. § 8124(b)(1), which took place on June 24, 1987. In a final decision dated September 21, 1987, a Department of Labor hearing officer affirmed the district office's decision denying FECA coverage. Plaintiff's Objection to Defendant's Motion to Dismiss ("Objection"), Exhibit 1.

Defendant filed its motion to dismiss on September 14, 1987, one week prior to the hearing officer's decision, arguing that because Dr. Kassel's appeal was pending, a substantial question of FECA coverage existed. Now that the Secretary of Labor has affirmed the denial of FECA coverage, defendant in its reply memorandum argues that if plaintiff appeals the hearing officer's decision administratively pursuant to 5 U.S.C. § 8128(a), this Court will be precluded from proceeding with the FTCA claim. Reply Memo at 4. Defendant may well be correct in its assertion, as remedy under FECA is exclusive. *See, e.g., Bailey v. United States*, 451 F.2d 963, 965 (5th Cir.1971). However, there is no evidence before the Court to show that plaintiff is pursuing such an appeal. A motion to dismiss may not be based on a speculative future event. The plaintiff has received a final decision from the Secretary of Labor denying coverage under FECA, Objection, Exhibit 1; 5 U.S.C. § 8128(b),

---

**3.** Although the First Circuit has stated that illegal conduct does not necessarily remove the immunity defense, it did so in a distinguishable fact situation. *Krohn, supra*, 742 F.2d at 30. In *Krohn*, plaintiff had argued that defendant FBI agents were not authorized by law to enter into a deal with defense counsel for the purpose of obtaining evidence. The court found the FBI agents had not acted outside their discretion because they had explicit authority to investigate crime. The defendants' activity in *Krohn* was not a clear transgression of clearly mandated statutory language, as may be true here, but was considered by the court to be only "of questionable propriety." *Id.; see Butz v. Economou*, 438 U.S. 478, 489, 98 S.Ct. 2894, 2902, 57 L.Ed.2d 895 (1977) (absolute immunity defense in *Barr v. Matteo* would not have been upheld had conduct been expressly forbidden by statute).

giving the Court jurisdiction over the FTCA claim, 28 U.S.C. § 2401(b). Therefore, defendant's motion for summary judgment as to Count II is denied on this basis. Defendant is, of course, free to renew its motion if plaintiff pursues an administrative appeal of the FECA decision.[4]

The United States next argues that the Court should dismiss plaintiff's action under two exceptions to FTCA set forth in 28 U.S.C. § 2680. Section 2680(a) provides that the FTCA does not cover "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." Defendant claims that the activities of which plaintiff complains fall within this "discretionary function exception". Defendant also argues that Count II, although stating a claim for intentional infliction of emotional distress, actually arises out of an alleged defamation and therefore is barred by section 2680(h), which states that the FTCA does not apply to any claim arising out of libel or slander.

*Section 2680(a)—The Discretionary Function Exception*

The discretionary function exception applies whenever the challenged acts of a government employee are of the nature and quality that Congress intended to shield from tort liability. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense ("Varig")*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). Congress did not intend to extend the FTCA into the realm of examining the validity of discretionary administrative action. *Id.* at 810, 104 S.Ct. at 2762–63 (citing Hearings on H.R. 5373 and H.R. 6463 before the House Committee and the Judiciary, 77th Cong., 2d Sess., 28, 29, 33, and 37 (1974)), and wished to prevent judicial "second guessing" of legislative and administrative decisions grounded in social,

economic, and political policy, *id.* at 814, 104 S.Ct. at 2765. The discretion protected by section 2680(a) includes the discretion of an administrator to act according to his judgment of the best course, as well as determinations made by administrators in establishing plans, specifications, or schedules of operations. "Where there is room for policy judgment, there is room for discretion." *Dalehite v. United States*, 346 U.S. 15, 34–36, 73 S.Ct. 956, 967–68, 97 L.Ed. 1427 (1953).

In the instant case, the VA employees were specifically authorized to make personnel decisions and to issue press releases. Each of these activities involves the exercise of just the type of discretion that should not be subject to "second-guessing" by the judiciary. The fact that the employees may have abused their discretion in performing these functions does not remove their actions from the exception. *K.W. Thompson Tool v. United States*, 656 F.Supp. 1077, 1083 (D.N.H.1987) (citing *Chamberlin v. Isen*, 779 F.2d 522, 525 (9th Cir.1985)), *aff'd* 836 F.2d 721 (1st Cir.1988).

However, although discretion abused is still discretion covered by the section 2680(a) exception, a decision cannot be shielded from liability if the decisionmaker is acting outside of his actual authority. "A government official has no discretion to violate the binding laws, regulations, or policies that define the extent of his official powers." *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1196 (D.C.Cir.1986); *see also Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *K.W. Thompson v. United States*, 836 F.2d at 727 n. 4 (1st Cir.1988).

▮ Plaintiff alleges that VA employees released confidential records in violation of the Privacy Act, 5 U.S.C. § 552a. The alleged release of information from Dr. Kassel's personnel files, if done in violation of the Act, subjects defendant's employees to criminal penalties. 5 U.S.C. § 552a(i)(1). Thus, there is a genuine issue of material

---

4. Because the Court has not granted defendant's motion to dismiss, it need not address plaintiff's argument that his claim for intentional infliction of emotional distress is not an injury covered by FECA.

fact whether defendant's agents violated a law which limits their authority. Because the Privacy Act precludes the disclosure of protected material to unauthorized persons, if it is found that information was released in violation of the Act, defendants would not be protected by the discretionary function exception. Therefore, Count II is dismissed regarding all claims except those relating to the unauthorized disclosure of confidential personnel records under 5 U.S.C. § 552a.

*Section 2680(h)—The Libel and Slander Exception*

Section 2680(h) provides in pertinent part:

> the provisions of this chapter ... shall not apply to any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights ....

28 U.S.C. § 2680(h). Defendant United States argues that although intentional infliction of emotional distress is not a listed exception, plaintiff's claim "arises out of" the libel and slander exceptions and therefore is barred.

The Supreme Court recently discussed the "arising out of" language in the context of the misrepresentation exception of section 2680(h). In *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the plaintiff brought a claim against the FmHA for negligent supervision of the construction of a house. Because the plaintiff alleged as part of his claim that he had relied on a faulty appraisal, the government argued that the claim should be dismissed under the misrepresentation exception. The court held that a claim "arises out of" an excepted cause of action only when the underlying government conduct is "essential" to plaintiff's claim. The court found that because the government misstatements were not essential to plaintiff's claim, and because plaintiff's claim arose out of other government conduct, the claim was not excepted by the misrepresen-

tation exception. *Id.* at 296–97, 103 S.Ct. at 1093.

In applying the *Block* decision to a claim for intentional infliction of emotional distress, the Eleventh Circuit held that the claim was barred by the defamation exception because the slanderous statements were essential to plaintiff's emotional distress claim; the plaintiff would not have been harmed had the statements been true. *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir.1986). The court specifically noted, however, that claims for intentional infliction of emotional distress do not necessarily depend on the falsity of the statements. *Id.*

■■■ In the instant case, plaintiff alleges that he was harmed by the release of both true and false information from his confidential personnel file. Plaintiff's Opposition at 9–10. To the extent that plaintiff claims damages for defamation as traditionally defined (injury to reputation caused by the unprivileged publication of false and defamatory statements to a third party), these claims are barred by the defamation exception. *See Jimenez–Nieves v. United States*, 682 F.2d 1, 6 (1st Cir.1982) (section 2680(h) bars claim that fits the traditional definition of the tort of defamation). However, to the extent that plaintiff claims harm from the unauthorized disclosure of *truthful* information (e.g., regarding plaintiff's previous job dismissal) from his personnel records, the claim will not be dismissed because the falsity of the statements is not essential to plaintiff's claim for intentional infliction of emotional distress. *Cf. Metz, supra,* 788 F.2d at 1535.

Finally, the government argues that the FTCA count should be dismissed because New Hampshire does not recognize the tort of intentional infliction of emotional distress and, even if there is such a tort, argues that plaintiff has failed to state a viable claim.

Although the New Hampshire Supreme Court has not specifically stated that it recognizes the tort of intentional infliction of emotional distress, *see McElroy v. Gaffney*, 129 N.H. 382, 391, 529 A.2d 889 (1987)

(concurrence of Justice Brock), it has implicitly recognized the tort. In *Plante v. Engel,* 124 N.H. 213, 469 A.2d 1299 (1983), the New Hampshire Supreme Court stated that "a claim for the intentional infliction of emotional distress should be treated as a separate cause of action." *Id.* at 217, 469 A.2d 1299. Similarly, in *McElroy* the majority stated unequivocally that "the defendants ... are entitled to have the emotional distress count tried to a jury whose verdict will be binding." *McElroy, supra,* 129 N.H. at 317, 529 A.2d 889 (citing *American Employer's Ins. Co. v. Liberi,* 101 N.H. 480, 482, 147 A.2d 306, 307–08 (1958)). Finally, this Court has previously recognized that such a claim exists under New Hampshire law. *See Brown v. Allenstown,* 648 F.Supp. 831, 839 (D.N.H.1986); *Chamberlin v. 101 Realty, Inc.,* 626 F.Supp. 865, 868–69 (D.N.H.1985).

Defendant United States argues that Count II should be dismissed because it does not state a claim for intentional infliction of emotional distress. Although the State of New Hampshire has not discussed the elements of the tort, it has adopted the Restatement definition. *See Jarvis v. Prudential,* 122 N.H. 648, 448 A.2d 407 (1982).

The Restatement (Second) of Torts § 46(1) states:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress; and if bodily harm results from it, for such bodily harm.

The focus is not on the motives of the defendant, but on the nature of the conduct. The Restatement sets forth a stringent test of "outrageousness": liability may be found if the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.; see also Morrell v. Forbes, Inc.,* 603 F.Supp. 1305 (D.Mass.1985). The extreme and outrageous character of the conduct may arise from an abuse of a position of authority. Restatement (Second) of Torts § 46 comment e (1965). Thus, courts

have recognized a cause of action for emotional distress for less egregious conduct in the context of an employer-employee relationship. *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 86 (3d Cir.1987) (citing *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir.1979); *Shaffer v. National Can Corp.,* 565 F.Supp. 909 (E.D.Pa.1983).

It is the Court's responsibility to determine initially whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Where reasonable people could differ, it is for the jury to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability. Restatement (Second) of Torts § 46 comment h (1965).

At this point, in light of the above discussion, the only part of Dr. Kassel's Count II claim which survives is for the alleged injury caused by the release of truthful information from his personnel file in contravention of the Privacy Act. The Court has not been apprised of the exact content of the information allegedly released, although it has been informed that the information included the fact that plaintiff had been fired by the VA previously— information that had been expunged from his personnel file. However, regardless of the content of the information, the Court finds that a reasonable person could consider that the release of confidential information by those who are in a position of authority and who are entrusted by law with the duty to keep that information confidential rises to the level of outrageousness necessary to sustain an action for intentional infliction of emotional distress. Thus, because the issue is a jury question, *see, e.g., Borras v. Sea–Land Service, Inc.,* 586 F.2d 881 (1st Cir.1978), summary judgment as to Count II is inappropriate, and defendant United States' motion is herewith denied.

In sum, the individual defendants' motion for summary judgment on the constitutional claims (document no. 8) is granted as to Count III (right of privacy), but is denied as to Count IV (free speech). The individu-

al defendants' motion for summary judgment on the pendent state claims (document no. 8) is denied as to Count V (invasion of privacy), but is granted as to Count VI (defamation).[5] The United States' motion for summary judgment (document no. 7) is denied as to Count II to the extent that plaintiff has stated a claim for intentional infliction of emotional distress caused by the release of truthful information from his confidential personnel file, in contravention of the Privacy Act, 5 U.S.C. § 552a.

SO ORDERED.

**5.** The parties should be aware of the recent First Circuit decision of *Kaiter v. Town of Boxford,* 836 F.2d 704, 708 (1st Cir.1988), which states that a party may not file an interlocutory appeal of a denial of the absolute immunity defense if that party intends to subsequently file a motion for summary judgment on the same count on the basis of qualified immunity. An interlocutory appeal may be filed only after the district court has had an opportunity to consider both defenses.