John HANSEN

v.

Donald LAMONTAGNE.

Civ. No. 90–562–B.

United States District Court,
D. New Hampshire.

Nov. 20, 1992.

---

R. Matthew Cairns, Concord, NH, for plaintiff.

Russell F. Hilliard, Michael J. Donovan, Concord, NH, Mark H. Gardner, Manchester, NH, for defendant.

## ORDER

DiCLERICO, Acting Chief Judge.

This is a civil rights action in which plaintiff John Hansen alleges defendant Donald Lamontagne violated plaintiff's constitutional right to privacy under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C.A. § 1983 (West 1981 & Supp.1992). In addition, plaintiff alleges state law claims of defamation, negligent infliction of emotional distress, invasion of privacy, and violation of the New Hampshire Access to Public Records and Meeting Law, N.H.Rev. Stat.Ann. § 91–A:5 (1990 & Supp.1991). The court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C.A. § 1343 (West 1976 & Supp.1992) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367 (West Supp.1992).

Defendant has moved for partial summary judgment on count VI–A of the complaint, which alleges a deprivation of constitutional rights. Defendant argues summary judgment is appropriate because, among other reasons, he is entitled to the defense of qualified immunity. Plaintiff has objected to defendant's motion. The court finds defendant is entitled to qualified immunity and therefore grants his motion for partial summary judgment on count VI–A of the complaint.

In addition, both parties have filed motions to strike material from the opposing party's affidavits filed with the motions. Because the court holds defendant is entitled to qualified immunity, these motions are moot.

### Background

Plaintiff has been a member of the Gorham, New Hampshire police department since February 1, 1985, and defendant a member of the Gorham Board of Selectman since March 1987. This lawsuit arises from a press release defendant issued on June 5, 1989. The press release expressed defendant's disapproval of the Gorham police chief's decision to nominate plaintiff for promotion to sergeant, the third highest rank on the police force. Defendant enumerated the reasons he considered plaintiff unqualified for the position:

Officer Hansen has been involved in more complaints than any other officer,

and named in more lawsuits than any other officer. [He is the] only officer to total a cruiser in a high speed chase, [he] fired shots at two 16 year old[s], was suspended and went to Franklin.

\* \* \* \* \* \*

He has to be protected by the Chief, why else would he be able to break into a house in Cascade and when the woman came to file a complaint, the police would not accept [it].

\* \* \* \* \* \*

Take the Rozek case[.][1] [Police Chief] George Gazey recommended counselling for Officer Hansen, [and] that's a matter of record. Counselling tells me that he was at fault.

\* \* \* \* \* \*

Also[,] when counselling was recommended by the Chief, the Town Manager tried to change the report to no counselling....

*See* June 5, 1989 Press Release, Exhibit 1 to Defendant's Motion for Summary Judgment.

Plaintiff claims defendant could have acquired the knowledge to make these statements only by looking at plaintiff's personnel file and/or from confidential information discussed at the executive sessions of the Board of Selectmen. Defendant denies this allegation, claiming he has never seen plaintiff's personnel file, and that he

relied on his own recollection of matters that had come before the Board of Selectmen; on past discussions with persons who had filed complaints against Hansen ... on past discussions with the Police Chief, Town Manager, and other present and former Selectmen; and on matters of common knowledge in the town.

*See* Defendant's Motion at 3.

Plaintiff alleges the press release was issued because the defendant has a "vendetta" against the police department generally, and the plaintiff specifically. *See* Plaintiff's Objection at 1. Plaintiff states

the personal animosity between plaintiff and defendant has existed since a May 7, 1987 Board of Selectmen meeting where the plaintiff spoke up at the time the selectmen were reviewing town employees' pay raises. Defendant claims there is no vendetta and says he issued the press release for the public good, to prevent plaintiff from receiving the rank of sergeant. *See* June 5, 1989 Press Release. In addition, defendant claims that he was expressing his constitutional right to free speech. *See* Lamontagne Affidavit at 6.

### *Discussion*

#### A. *Standard of Review*

■ Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial responsibility of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 227–28 (1st Cir.1992). The opposing party must then document "some factual disagreement sufficient to deflect *brevis* disposition." *Quintero de Quintero,* 974 F.2d at 228 (quoting *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). When deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and accord that party all beneficial inferences to be discerned from the evidence. *Ismert & Assoc. v. New England Mut. Life Ins. Co.,* 801 F.2d 536, 537 (1st Cir.1986).

■ A government official exercising discretionary authority is entitled to qualified immunity in respect to § 1983 claims only if his or her conduct does not violate

---

1. *Rozek v. Hansen,* No. 90–CV–103–S (D.N.H.), was an action under 42 U.S.C.A. § 1983. Michael Rozek charged Hansen with police brutali- ty. Judgment was entered by reason of settlement on November 21, 1990.

"clearly established" statutory or constitutional rights. *Quintero de Quintero*, 974 F.2d at 228 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To be "clearly established," the contours of the right must be sufficiently clear so that a reasonable official would understand what he is doing violates that right. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

■■■ When deciding if a defendant is entitled to qualified immunity, the court does not consider whether a defendant actually violated a plaintiff's constitutional rights. The court focuses only on whether the defendant's behavior was "objectively reasonable, as a matter of federal law," at the time and under the circumstances of the action at issue. *See id.; see also Amsden v. Moran*, 904 F.2d 748, 751 (1st Cir. 1990), *cert. denied*, 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).[2] "Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity." *Collins v. Marina–Martinez*, 894 F.2d 474, 478 (1st Cir.1990).

■■ When a defendant moves for summary judgment on the basis of qualified immunity, it is plaintiff's burden to demonstrate defendant's infringement of a "clearly established" federal right. *Quintero de Quintero*, 974 F.2d at 228; *Castro–Aponte v. Ligia–Rubero*, 953 F.2d 1429, 1430 (1st Cir.1992). If plaintiff fails to do so, defendant prevails. *Quintero de Quintero*, 974 F.2d at 228; *Castro–Aponte*, 953 F.2d at 1431.

**B. Lack of a "Clearly Established" Right of Privacy**

■■ Plaintiff argues two United States Supreme Court cases establish that "[t]he general law of constitutional privacy is clear—American citizens have a constitutionally protected right not to have their personal and private affairs made public by government officials." Plaintiff's Objection at 9 (citing *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)).

In *Whalen v. Roe*, the United States Supreme Court reviewed the validity of a New York statute pursuant to which the state collected and recorded in a centralized computer file the names and addresses of all persons who had obtained, under a doctor's prescription, certain drugs for which there is both a lawful and an unlawful market. *See* 429 U.S. at 591–95, 97 S.Ct. at 872–74. In considering whether the statute violated a constitutional right of privacy, the Court began by stating "[t]he cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. *One is the individual interest in avoiding disclosure of personal matters*, and another is the interest in independence in making certain kinds of important decisions." *Whalen*, 429 U.S. at 598–600, 97 S.Ct. at 875–77 (footnotes omitted) (emphasis added). The appellees in *Whalen* argued the statute violated both of these interests. *Id.* at 600, 97 S.Ct. at 877. The Court found, however, the statute did not, "on its face, pose a sufficiently grievous threat to either interest to establish a constitutional violation." *Id.*

In addition, the *Whalen* Court noted explicitly what it did not decide. While the

---

**2.** The objective legal reasonableness standard eliminates from the court's consideration allegations about the government official's subjective state of mind, such as bad faith or malicious intent. *Floyd v. Farrell*, 765 F.2d 1, 4 (1st Cir. 1985). As such, the court notes plaintiff's allegation of defendant's "ulterior motive" in making the disclosure is not relevant to the court's decision of whether the qualified immunity defense is applicable. In addition, the objective legal reasonableness of the government official's conduct is not measured against the defendant's *actual* knowledge of the constitutional standards and the probable constitutionality of his or her action, but rather against a relatively uniform level of "presumptive knowledge" of constitutional standards. *Floyd*, 765 F.2d at 4–5.

Court recognized the potential threat to privacy in the collection of vast amounts of data, it noted the statute, and its implementing administrative procedures,

"evidence a proper concern with, and protection of, the individual's interest in privacy. *We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—* whether intentional or unintentional—or by a system that did not contain comparable security systems."

*Id.* at 605–06, 97 S.Ct. at 879 (emphasis added). To assure there would be no misunderstanding, Justice Stewart wrote separately and noted the Court's opinion did not support the proposition that broad dissemination of the information collected by the state would violate the Constitution. *See id.* at 608–09, 97 S.Ct. at 881.

In *Nixon v. Administrator of General Services,* the Supreme Court considered the constitutionality of a statute directing archivists to screen materials generated during Mr. Nixon's presidency, and to return his personal papers among those materials to him. *See* 433 U.S. at 430–36, 97 S.Ct. at 2783–87. Mr. Nixon argued, among other grounds, that the statute violated his right of privacy under the Fourth and Fifth Amendments. *Nixon,* 433 U.S. at 455, 97 S.Ct. at 2796. Mr. Nixon claimed the statute was "tantamount to a general warrant authorizing search and seizure of all of his Presidential 'papers and effects.'" *Id.* at 460, 97 S.Ct. at 2799.

In rejecting Mr. Nixon's argument, the Court made reference to *Whalen,* stating that "[o]ne element of privacy has been characterized as 'the individual interest in avoiding disclosure of personal matters....'" *Nixon,* 433 U.S. at 457, 97 S.Ct. at 2797 (quoting *Whalen,* 429 U.S. at 599, 97 S.Ct. at 876). By citing *Whalen,* the Court recognized Mr. Nixon did have a legitimate expectation of privacy that entitled him to Fourth Amendment protection in that portion of the materials which were his personal communications. *Id.* at 465, 97 S.Ct. at 2801. However, the *Nixon* Court did not go so far as to create a constitutional right to nondisclosure. *See id.* Justice Stewart explicitly concurred in the *Nixon* opinion, restating the understanding he expressed in *Whalen* that the Court was not establishing a general right to nondisclosure of private information. *See Nixon,* 433 U.S. at 455 n. 18, 97 S.Ct. at 2796 n. 18.

The *Nixon* Court ultimately held the statute did not violate Mr. Nixon's right of privacy. *Id.* at 465, 97 S.Ct. at 2801. In reaching this decision, the Court stated Mr. Nixon's expectation of privacy was outweighed by the limited intrusion of the screening process, by Mr. Nixon's status as a public figure, by his lack of any expectation of privacy in the overwhelming majority of the materials, by the important public interest in the preservation of the materials, and by the virtual impossibility of segregating the small quantity of private materials without comprehensive screening. *Id.*

In summary, the *Whalen* Court did not hold that the disclosure of confidential information violates a constitutional right of privacy. The *Nixon* Court recognized an expectation of privacy in personal information in situations implicating the Fourth Amendment. However, the *Nixon* Court did not equate this expectation of privacy with a general constitutional right of nondisclosure.

The First Circuit has also spoken on whether a "clearly established" right of privacy in the nondisclosure of confidential information exists. In *Borucki v. Ryan,* a § 1983 action, the First Circuit held it was not clearly established in 1983, the time the cause of action arose, that a government official's dissemination of a confidential psychiatric evaluation violated constitutionally protected privacy interests. 827 F.2d 836, 848 (1st Cir.1987). The *Borucki* court emphasized that the Supreme Court, in *Whalen,* had specifically refrained from deciding whether the right of privacy is implicated when private data collected by the government is publicly disclosed. *Borucki,* 827 F.2d at 842 (citing *Whalen,* 429 U.S. at 605–06, 97 S.Ct. at 879–80).

Additionally, the *Borucki* court suggested the *Nixon* Court's discussion of a privacy right was not meant to establish a constitutional right to nondisclosure. *Borucki*, 827 F.2d at 844. The *Borucki* court stated "that section of the opinion in which the [*Nixon*] Court cites *Whalen* appears to address the question of whether Mr. Nixon had a 'legitimate expectation of privacy' in the relatively few personal papers among the materials, sufficient to implicate the fourth amendment." *Borucki*, 827 F.2d at 844 (footnotes omitted) (citations omitted). In a footnote, the *Borucki* court explained that

> [a] number of Supreme Court decisions suggest that the right of privacy created by the fourth amendment should not be casually conflated with the right of privacy arising under the fourteenth amendment. The *Nixon* Court itself ... cites to *Katz v. United States*, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967), which points out that:
>
>> the Fourth Amendment cannot be translated into a general constitutional "right to privacy".... Other provisions of the Constitution protect personal privacy from other forms of governmental intrusion. But the protection of a person's *general* right to privacy—his right to be let alone by other people—is ... left largely to the law of the individual States.
>
> 389 U.S. at 350–51, 88 S.Ct. at 510–11 (footnotes omitted).

*Borucki*, 827 F.2d at 844 n. 13. The court concluded *Nixon* does not clearly establish that "information protected from seizure under the fourth amendment is necessarily entitled to protection under a right of nondisclosure originating in the fourteenth amendment...." *Borucki*, 827 F.2d at 844 n. 13.

In light of this discussion, the *Borucki* court found the Supreme Court had not clearly established that a constitutional right of privacy would be implicated under the facts of that case. *Id.* The court then studied whether the circuit courts had clearly established that a constitutional right of privacy would be implicated. *See id.* at 845–48 (citations omitted). The court concluded there was no clearly established privacy right among lower courts, relying on the fact there was a split in the circuits in early 1983, the time of the alleged constitutional violation. *Id.* at 848. Thus, the *Borucki* court held the defendant was entitled to the qualified immunity defense. *Id.* at 849.

In 1988, the United States District Court for the District of New Hampshire reviewed the issue in *Kassel v. United States Veteran's Administration*, 682 F.Supp. 646, 650 (D.N.H.1988). In *Kassel*, also a § 1983 action, the court determined that the circuit split had not been reconciled by 1985, when the asserted cause of action arose. *Id.* As such, the *Kassel* court applied *Borucki* and held defendants were immune from suit under the qualified immunity doctrine. *Kassel*, 682 F.Supp. at 650.[3]

Applying the law to the facts in this action, the court finds the law still does not "clearly establish" a constitutional right to privacy in the nondisclosure of confidential information. Plaintiff's reliance on *Whalen* is to no avail. As noted above, the *Whalen* Court stated it did not decide whether the disclosure of private data would violate the Constitution. *See* 429 U.S. at 605–06, 97 S.Ct. at 879–80. Plaintiff's reliance on *Nixon* is similarly unavailing. As stated earlier, *Nixon* did not establish a clear rule that disclosure of confidential information violates the Constitution. *See* 433 U.S. at 455–65, 97 S.Ct. at

---

**3.** Plaintiff argues the *Kassel* decision holds otherwise and prevents defendant from receiving qualified immunity. Plaintiff's Objection at 15. Without citation, plaintiff states that "[o]n March 17, 1989, this court's [sic] ruled in *Kassel* that an employee had a privacy interest in keeping the contents of personnel files confidential." Plaintiff's Objection at 15. Plaintiff presumably refers to *Kassel v. United States Veteran's Ad-*

*ministration, (Kassel II)*, 709 F.Supp. 1194, 1199 (D.N.H.1989) ("Employees have a privacy interest in their employment history"). *Kassel II*, however, concerns an alleged violation of the Federal Privacy Act, 5 U.S.C.A. § 522a (West 1977 & Supp.1992), a claim not at issue in this action. By contrast, *Kassel v. United States Veteran's Administration*, (Kassel I) 682 F.Supp. 646, 650 (D.N.H.1988) concerns a § 1983 claim.

2796–97. Finally, plaintiff finds no support in *Borucki.* The *Borucki* court stated explicitly that *Whalen* does not clearly establish a constitutional right of privacy against nondisclosure. *See Borucki*, 827 F.2d at 842. The *Borucki* court also indicated that *Nixon* did not clearly establish such a rule. *See Borucki*, 827 F.2d at 844 n. 13.[4] Furthermore, the circuit court split referred to in *Borucki* has not been resolved, which is additional evidence that plaintiff has no clearly established constitutional right.

To conclude, it is not clearly established that plaintiff has a constitutional privacy right not to have information in his personnel file disclosed. As such, defendant's motion for partial summary judgment on count VI–A of the complaint is granted because defendant is immune from suit under the doctrine of qualified immunity.

### C. Dismissal of the State Law Claims

■ When a district court dismisses all federal claims before trial, it has broad discretion to refuse to exercise jurisdiction over remaining pendent state claims. *See, e.g., Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991). The United States Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mel-*

*lon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). The First Circuit has recognized, however, that the expiration of a state statute of limitations period is an important factor to consider when deciding whether to dismiss a pendent claim. *Newman*, 930 F.2d at 963 (citations omitted).

■ In this action, the statute of limitations has run on plaintiff's state law claims. *See* N.H.Rev.Stat.Ann. § 508:4 (Supp.1991).[5] In addition, the court did not begin to consider the parties' motions until after the statute of limitations had run. Therefore, the court is of the opinion that it should not dismiss those claims that remain in this action.

### Conclusion

Because defendant is entitled to qualified immunity on the claim of deprivation of plaintiff's constitutional rights, the court grants defendant's motion for partial summary judgment on count VI–A of the complaint (document no. 13). In light of this decision, plaintiff's motion to strike (document no. 14) and defendant's motion to strike (document no. 16) are moot. The court retains jurisdiction over plaintiff's state law claims, counts VI–B through VI–E.

SO ORDERED.

---

**4.** The *Borucki* court does note the *Nixon* Court found Mr. Nixon had an expectation of privacy in his personal materials. *See Borucki*, 827 F.2d at 844. In this action, plaintiff, like Mr. Nixon, raises a claim that his Fourth Amendment rights were violated. Even assuming plaintiff, like Mr. Nixon, had an expectation of privacy in the information in his personnel file, *see Nixon*, 433 U.S. at 465, 97 S.Ct. at 2801, this does not establish that plaintiff has a clearly established constitutional right against disclosure of that information.

Furthermore, even if the court assumes plaintiff's expectation of privacy establishes a right against disclosure of that information, *see, e.g., Borucki*, 827 F.2d at 848, the *Borucki* court notes "the facts of decided cases [do] not provide sufficient indication of how that right would be

weighed against competing interests." *Id.* Under these circumstances, "when the law requires a balancing of competing interests, it may be unfair to charge an official with knowledge of the law in the absence of a previous decided case with clearly analogous facts." *Id.* (footnote omitted).

**5.** The statute provides, in relevant part,

I. Except as otherwise provided by law, all personal actions, except actions for libel or slander, may be brought only within 3 years of the act or omission complained of....

II. Personal actions for slander or libel, unless otherwise provided by law, may be brought only within 3 years of the time the cause of action accrued.

N.H.Rev.Stat.Ann. § 508:4 (Supp.1991).