Strafford
No. 86-367
No. 86-368

JOHN F. MCELROY,
INDIVIDUALLY AND ON BEHALF OF
ACTION MANUFACTURING COMPANY, INC.

v.

LAWRENCE A. GAFFNEY *& a.*

June 3, 1987

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover (*James H. Schulte* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Ronald J. Lajoie* and *Robert E. Murphy, Jr.,* on the brief, and *Mr. Murphy* orally), for the defendants Lawrence A. Gaffney and Jerold R. Graff.

JOHNSON, J. This is an interlocutory appeal from rulings by the Trial Court (*Temple,* J.) denying the defendants a jury trial and refusing to disqualify the plaintiff's attorney, in this the third lawsuit between these parties arising out of the ownership and operation of Action Manufacturing Company. The following issues are presented for our review: (1) to what extent does the constitutional right to a jury trial require a binding jury verdict where the plaintiff's bill in equity includes a count alleging intentional infliction of emotional distress; and (2) whether the plaintiff's attorney should have been disqualified, where it appeared that he would be a necessary witness at trial, as a result of his continuous past representation of the plaintiff in matters at issue in this lawsuit. We hold that the defendants are constitutionally entitled to a binding jury verdict on the legal claim, but find no error in the trial court's refusal to disqualify the plaintiff's counsel.

The relevant facts are these. In 1978, John F. McElroy and Lawrence A. Gaffney left their employment at Chelsea Enterprises, Inc., a Massachusetts corporation, taking several other employees with them, including Jerold R. Graff. McElroy and Gaffney had formed Action Manufacturing Company, Inc. (hereinafter referred to as "the corporation") while both were still employed at Chelsea Enterprises, which is involved in the manufacture and sale of products utilized in the shoe industry. McElroy and Gaffney invested about $130,000 in the corporation.

The new venture was stymied at the start when Chelsea Enterprises obtained an injunction preventing the corporation from competing in the domestic market. From August 1978 to mid-January 1979, the corporation's financial woes were mitigated by the infusion of "loans" of about $106,000 by McElroy and $2000 by Gaffney. There was also a partial stock and asset sale to another corporation, Textile Tape, Inc., which had an established foreign market. The relationship between the parties deteriorated. Believing he was being forced out of the corporation, McElroy retained Attorney James H. Schulte in 1980, and brought a successful petition to compel Gaffney and the corporation to provide him with access to corporate records.

In March 1982, McElroy brought suit to compel a readjustment of the disproportionate investments made by McElroy and Gaffney in the corporation, again retaining Attorney Schulte to represent him. When Gaffney terminated McElroy's salary in November 1982, McElroy filed an action at law to recover compensation and benefits, with Schulte acting as his attorney. Meanwhile, Gaffney filed suit on behalf of the corporation in an effort to deny McElroy access to the corporate books, and to enjoin him from divulging any information to Chelsea Enterprises and others. McElroy prevailed in both actions, with Schulte at his side. Schulte has continued to represent McElroy in his general course of dealings with the corporation and, having done so, is intimately involved in and familiar with the various transactions at issue in the current action.

The instant case was commenced by a bill in equity in May 1985, and was framed as a shareholders' derivative action. The plaintiff alleged that the defendants used the corporation to their own purposes and diverted corporate assets. He sought damages, an accounting, restoration of improperly diverted assets, and an injunction to prevent future damages. Additionally, in paragraph 23 of the bill in equity, the plaintiff raised a claim for damages for intentional infliction of emotional distress. Attorney Schulte is the plaintiff's counsel of record in this action.

The defendants Gaffney and Graff made demand for jury trial in their initial pleading. This demand was subsequently joined by Marsh and Colby, the attorney and accountant for the corporation. They also moved for the disqualification of Attorney Schulte because he would be a necessary witness at the trial. The court denied the jury trial demand, instead appointing an "advisory jury" to hear the emotional distress count, pursuant to RSA 519:23, noting that the right to a jury trial on the one "legal" claim would thereby remain intact.

By separate order entered the same day, the court denied the defendants' motion to disqualify Attorney Schulte. The court found that Schulte's knowledge of the various transactions that comprise this case would likely make him a "necessary witness" within the meaning of Rule 3.7 of the New Hampshire Rules of Professional Conduct. The court further found, however, that disqualification of Schulte following his extended involvement in the intricacies of the case would create an unreasonable hardship on the plaintiff within the meaning of paragraph (a)(3) of the same rule. The defendants brought this interlocutory appeal to challenge the above rulings.

I. *Right to a Jury Trial*

We first consider whether the trial court's designation of an "advi-

sory jury" to hear the emotional distress claim satisfied the defendants' right to a jury trial under part I, article 20 of the New Hampshire Constitution, which provides:

> "In all controversies concerning property—and in all suits between two or more persons, except in cases in which it has been heretofore otherwise used and practiced, and except in cases in which the value in controversy does not exceed five hundred dollars, and title of real estate is not concerned the parties have a right to a trial by jury and this method of procedure shall be held sacred, unless, in cases arising on the high seas and such as relates to mariners' wages the legislature shall think it necessary hereafter to alter it."

■■ This provision affords the unqualified right to a trial by jury in actions at common law, as it was understood to apply at common law prior to 1784. *Hallahan v. Riley*, 94 N.H. 338, 339, 53 A.2d 431, 432 (1947). It is well recognized that the right has no application in special, statutory, or summary proceedings unknown to the common law, *id.* at 340, 53 A.2d at 432, or to purely equitable proceedings, *Lakeman v. LaFrance*, 102 N.H. 300, 304, 156 A.2d 123, 126 (1959).

■■ However, it is equally well recognized that the jury trial right remains intact even though a legal action to which the right attaches is joined with an action in equity:

> "A party's constitutional right to a trial by jury is not lost by the presentation of [legal] issues in an equity proceeding or by joining equity and law claims in one action. The issues as to which a party has and claims a right to jury trial may be determined by a jury in equity. . . ."

R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 2045(a), at 496 (1984). Indeed, "the decisions of this State indicate a strong tendency to uphold the right of trial by jury whenever possible . . . ." *Hampton v. Palmer*, 99 N.H. 143, 146, 106 A.2d 397, 399 (1954) (citing *Murphy & Sons, Inc. v. Peters*, 95 N.H. 275, 62 A.2d 718 (1948)). Our courts "will generally give a jury trial to a party who claims the right in a timely fashion as to any issues that would have been subject to a jury trial if brought in a separate action . . . ." WIEBUSCH, *supra* § 1455, at 252.

■■ Both parties concede that a shareholders' derivative action is an action in equity. *See Bowker v. Nashua Textile Co.*, 103 N.H. 242, 245, 169 A.2d 630, 632 (1961). However, that a cause of action

for intentional infliction of emotional distress is an action at law is, we think, beyond peradventure. Such a tort is a wrong that falls within the traditional definition of a tort as "[a] civil wrong for which the remedy is a common law action for unliquidated damages, and which is not exclusively the breach of a contract or the breach of a trust or other merely equitable obligation." SALMOND, LAW OF TORTS 13 (10th ed. 1945). *See Plante v. Engel,* 124 N.H. 213, 469 A.2d 1299, 1302 (1983) (annotated in 49 A.L.R.4th 1 (1983)); *Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979).

This case is different from *Smith v. Manchester Management Corp.,* 117 N.H. 361, 373 A.2d 361 (1977), cited by the plaintiff. *Smith* involved an action for a constructive trust and damages arising out of a partnership agreement; it was strictly and solely an equitable action for an accounting and did not join a legal claim. In the instant case, however, paragraph 23 of the bill in equity specifically raises a legal rather than an equitable claim. Although it may be true that the action as a whole remains predominantly one for equitable relief, we agree with the reasoning in *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.,* 294 F.2d 486, 491 (5th Cir. 1961), that it makes no constitutional difference "if the equitable cause clearly outweigh[s] the legal cause so that the basic issue of the case taken as a whole is equitable."

Since in this action the defendants are entitled to have the legal issue decided by a jury as a matter of right, it follows that the verdict of the jury must be accorded binding effect. *See American Employers Ins. Co. v. Liberi,* 101 N.H. 480, 482, 147 A.2d 306, 307–08 (1958). Hence, the trial court's appointment of a mere "advisory jury" to hear the emotional distress count, pursuant to RSA 519:23, was error.

RSA 519:23 provides that "[t]he court may direct proper issues to be framed for the trial by a jury of any question of fact arising in a suit in equity . . . ." However, this provision must be read in conjunction with RSA 491:16, which provides that "[i]n bills in equity, when issues are framed and tried by a jury, the verdict or findings of the jury shall be advisory only and may be modified or set aside if not satisfactory to found a decree upon." It is settled that this latter provision does not permit the court to disregard a jury verdict upon an issue triable to a jury as a matter of right. *American Employers Ins. Co., supra* at 482, 147 A.2d at 308. Since the defendants in this case are entitled to have the emotional distress count tried to a jury whose verdict will be binding, *id.,* the appointment of an advisory jury is not a constitutionally acceptable substitute.

■ The fact that an advisory jury was appointed to hear the emotional distress count belies the contention, advanced by the plaintiff, that the issues in this case are too complex for jury consideration. The complexity of a case alone is not sufficient reason for refusing to allow the jury trial guaranteed by our constitution, *Murphy & Sons, Inc. v. Peters*, 95 N.H. 275, 276, 62 A.2d 718, 719 (1948), and we hold that the defendants are entitled to a binding jury verdict on the emotional distress issue. *See Plante v. Engel*, 124 N.H. 213, 469 A.2d 1299 (1983).

## II. *Disqualification of Counsel*

We now consider whether the trial court erred in refusing to disqualify Attorney Schulte because he would likely be a witness at the trial. The issue involves the interpretation and application of Rule 3.7 of the Rules of Professional Conduct, which makes it professional misconduct for a lawyer to act as an advocate in a trial at which he is likely to be a necessary witness except in certain specified cases.

In construing Rule 3.7, we note that we are writing on a clean slate, as the rule in its current form was only recently enacted. Adopted by this court effective February 1, 1986, Rule 3.7 replaces Disciplinary Rules 5-101(B) and 5-102 of the Code of Professional Responsibility. As set forth in the ABA Model Rules of Professional Conduct, and as originally proposed to this court by the New Hampshire Bar Association, Rule 3.7 provided that disqualification could be avoided on the ground of "substantial hardship [to] the client," and the rule was adopted in that form in many States. *See, e.g.*, MO. S. CT. RULE 3.7; ARIZ. S. CT. RULE ER 3.7. However, this court rejected the word "substantial" in favor of the word "unreasonable," in order to limit the scope of required disqualification and ease the burden on the party charged with proving hardship. To the extent that cases cited herein involve either the old rule or a different version of the new one, they are relied on only for guidance.

Rule 3.7 as adopted in New Hampshire provides as follows:

> "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work unreasonable hardship on the client."

■■■ In exercising its discretion to allow or forbid an attorney who is an advocate in the case also to appear as a witness, the court should examine the purpose of the advocate-witness rule and determine whether the particular situation requires withdrawal. *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983). The recognized reasons for forbidding counsel to appear as a witness include the following: eliminating the possibility that the attorney will not be a fully objective witness, and reducing the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant special weight to an attorney's arguments. *Id.* The rule also "reflects a broad concern that the administration of justice not only be fair, but also appear fair." *Id.* Since traditional and primary rationales for the rule are the protection of the legal system from the appearance of impropriety and the avoidance of jury confusion, Note, *The Advocate-Witness Rule: If Z, Then X, But Why?*, 52 N.Y.U. L. REV. 1365, 1369 (1977) (discussing DR 5-101(B) and 5-102 of the CODE OF PROFESSIONAL RESPONSIBILITY of the American Bar Association), we reject the argument that the presence of a jury is an irrelevant consideration. Clearly, the appearance of impropriety argument loses force in a nonjury setting. Note, 52 N.Y.U. L. REV. at 1390. However, since we have held that the legal count in this case is triable to a jury as a matter of constitutional right, we approach the question with all of the foregoing policies in mind.

■■■ All we need decide in the instant case is whether the disqualification of Attorney Schulte would work an unreasonable hardship on the plaintiff. In resolving this question, "a balancing is required between the interests of the client and those of the opposing party. . . . [D]ue regard must be given to the effect of disqualification on the lawyer's client." RULE 3.7, comment. A central consideration in this balancing is whether plaintiff's counsel's knowledge of the facts underlying this suit is extensive and unique. *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1540 (S.D.N.Y. 1985) (construing DR 5-102).

It is beyond question that Attorney Schulte's knowledge of the transactions involved in the present case is extensive. He has represented the plaintiff in these matters for six years. He has become intimately familiar with the numerous details involved. He has participated in the discovery process, and has a consummate understanding of his client's needs.

In determining whether Attorney Schulte's knowledge of this case is unique, so as to justify the application of the hardship exception, we must ask whether the facts and transactions involved are significantly complex. The numerous transactional relationships, both per-

sonal and professional, that gave rise to this litigation are not simple. The conduct of the parties exists against a backdrop of complex business and personal transactions that vex the unfamiliar observer. A master's compilation of the essential facts numbers a full fourteen pages in length. The operation of Action Enterprises involved no fewer than three complex separate business agreements, including two partnerships and a corporation. Intricate and lengthy negotiations took place. Under these circumstances, we think that Attorney Schulte's extended involvement with this case renders him particularly and uniquely qualified to represent the plaintiff, so that his departure would work an unreasonable hardship upon his client.

This case is thus distinguishable from *Groper v. Taff,* 717 F.2d 1415 (D.C. Cir. 1983), cited by the defendants. Although in that case the hardship exception of DR 5-102(A) was held not applicable, *Groper* was, unlike the case at bar, "a relatively straightforward . . . case," *id.* at 1419, in which "neither the contested issues nor the factual background [were] particularly complex." *Id.*

■ Further, although we recognize that the financial hardship and delay typically associated with the retention of new counsel do not, by themselves, constitute unreasonable hardship, since such hardship will exist to some degree in all cases where attorneys are disqualified, we think the expense factor is relevant here. Disqualification of Attorney Schulte would force the plaintiff to make considerable financial sacrifice in order to pay new counsel to simply familiarize himself with the litigation. The fact that the plaintiff presently possesses finite resources and has already experienced protracted economic hardship cannot be ignored. Noting that the conduct and control of the trial is committed to the discretion of the trial judge, whose rulings will not be overturned absent error of law or abuse of discretion, *Cloutier v. Charland,* 100 N.H. 63, 64, 119 A.2d 96, 97 (1955), we cannot say that the trial judge erred or abused his discretion in this case. We hold that Attorney Schulte was properly permitted to continue as counsel, notwithstanding the fact that he may be called to testify at trial.

■ Finally, while it is not our goal to create an exception that "swallows the rule," it is important to consider the potential for abuse inherent in the disqualification provision. Such potential inheres in the rule to the extent it permits an opposing party to influence the client's selection of counsel. "By forcing the client, often at considerable expense, to employ other and usually less suitable counsel, the rule effectively penalizes individuals for having the foresight to consult an attorney on a legal problem in advance."

Note, *The Advocate-Witness Rule*, 52 N.Y.U. L. REV. at 1367. Therefore, in applying the disqualification rule, care must be taken "to prevent literalism from . . . overcoming substantial justice to the parties." *J. P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring). In this regard, we would be less than candid were we not to recognize that disqualification motions "are often simply common tools of the litigation process . . . used . . . for purely strategic purposes." Van Graafeiland, *Lawyer's Conflict of Interest—A Judge's View* (Part II), N.Y.L.J., July 20, 1977, at 1, col. 2.

*Reversed in part; affirmed in part.*

BATCHELDER, J., concurred; BROCK, C.J., and THAYER, J., concurred specially; SOUTER, J., did not sit.

BROCK, C.J., concurring in the result: Because this court has never addressed the merits of the question of whether or not the tort of intentional infliction of emotional distress should be recognized, and the question is not at issue in the present appeal, I concur only in the result reached.

THAYER, J., joins in the concurrence of BROCK, C.J.