Lebanon District Court
No. 90-354

JULIE MORANCY

v.

PAMELA MORANCY

ROBERT MORANCY

v.

PAMELA MORANCY

July 26, 1991

*Donald C. Koury,* of Lebanon, by brief for the plaintiffs.

*Richards, Gawryl & MacAllister,* of Nashua (*Janine Gawryl* on the brief), by brief for the defendant.

JOHNSON, J.   The defendant appeals a decision of the Lebanon District Court (*Papademas,* S.J.) awarding the plaintiffs recovery for intentional infliction of emotional distress. We recognize the existence of this tort under New Hampshire law, but find that the plaintiffs have failed to prove all of the essential elements of this cause of action. Thus, we reverse.

The plaintiffs individually brought actions against the defendant claiming that the defendant, the former wife of the plaintiff Robert Morancy, intentionally inflicted emotional distress upon Robert and his present wife, Julie, by a series of actions which constituted extreme and outrageous conduct. The conduct complained of included, *inter alia,* alleged harassing telephone calls, scratching of the paint on the plaintiffs' vehicle, and operation of the defendant's vehicle in such a manner as to harass the plaintiffs. The defendant denied these allegations, and the two cases were tried together.

The trial court found that "a tort has been committed, be it called harassment, invasion of privacy, or outrageous conduct. However, the Court finds a very limited amount of damages and awards each plaintiff the amount of $100.00." The trial court granted requests for specific findings of fact including findings that: "Julie Morancy has suffered no severe mental distress" and "Robert Morancy has suffered no severe mental distress." However, the court ruled that, "[i]f the tort of intentional infliction of emotional distress exists in New Hampshire, Plaintiffs have the burden of proving that the alleged conduct was extreme and outrageous and intentionally caused severe emotional distress."

The first issue before us is whether New Hampshire recognizes the tort of intentional infliction of emotional distress. This is the first case in which we have squarely addressed this question. In *Jarvis v. Prudential Insurance Company of America,* 122 N.H. 648, 652, 448 A.2d 407, 409 (1982), we stated that, "[a]ssuming *arguendo* that this court, in an appropriate case, would recognize the tort of intentional infliction of mental distress, this is not such a case." In *Plante v.*

*Engel*, 124 N.H. 213, 217, 469 A.2d 1299, 1302 (1983), wherein this court recognized a cause of action for intentional interference with parental custody, as to the plaintiff's additional claim for damages for emotional distress we stated, "We are of the opinion that a claim for the intentional infliction of emotional distress should be treated as a separate cause of action. *See* RESTATEMENT (SECOND) OF TORTS § 46 (1965)." Finally, in *McElroy v. Gaffney*, 129 N.H. 382, 386–87, 529 A.2d 889, 891 (1987), we stated, "[T]hat a cause of action for intentional infliction of emotional distress is an action at law is, we think, beyond peradventure. Such an action is a wrong that falls within the traditional definition of a tort as '[a] civil wrong for which the remedy is a common law action for unliquidated damages . . . .'" However, in *McElroy*, Chief Justice Brock stated, in a concurring opinion, "Because this court has never addressed the merits of the question of whether or not the tort of intentional infliction of emotional distress should be recognized, and the question is not at issue in the present appeal, I concur only in the result reached." *Id.* at 391, 529 A.2d at 894. Justice Thayer joined in that concurrence.

The U.S. District Court for the District of New Hampshire stated in 1988:

> "Although the New Hampshire Supreme Court has not specifically stated that it recognizes the tort of intentional infliction of emotional distress . . . it has implicitly recognized the tort. . . . [T]his Court has previously recognized that such a claim exists under New Hampshire law. *See Brown v. Allenstown*, 648 F. Supp. 831, 839 (D.N.H. 1986); *Chamberlin v. 101 Realty, Inc.*, 626 F. Supp. 865, 868–69 (D.N.H. 1985)."

*Kassel v. U.S. Veterans Admin.*, 682 F. Supp. 646, 658–59 (D.N.H. 1988) (citations omitted). This court has recently had the occasion, in a case involving alleged negligent infliction of emotional distress, to state that the plaintiff "is required to prove physical manifestations of his distress . . . ." *Thorpe v. State*, 133 N.H. 299, 303, 575 A.2d 351, 353 (1990).

The tort of intentional infliction of emotional distress is widely recognized in other States, *see* RESTATEMENT (SECOND) OF TORTS § 46 app. (1984 & Supp. 1990–91), and we now recognize the tort in this State. Section 46 of the Restatement (Second) of Torts reads as follows:

> "§ 46. Outrageous Conduct Causing Severe Emotional Distress

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

RESTATEMENT (SECOND) OF TORTS § 46 (1965). Having previously recognized the tort of negligent infliction of emotional distress, there is no logical reason why we should not now recognize the tort of *intentional* infliction of emotional distress. Intentional conduct which causes harm to another is certainly more blameworthy than negligent conduct which causes such harm.

██ Comment *j*. to the Restatement (Second) of Torts clarifies the requirement that there be severe emotional distress:

> "j. *Severe emotional distress*. The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity."

In the case before us, the trial court found as fact that neither Robert nor Julie Morancy suffered severe mental distress. Because a finding of severe mental distress is an essential element of the tort we now recognize, the evidence does not support the judgment of the trial court as to this claim, and we reverse it. We leave for another day the determination whether proof of physical manifestations is a prerequisite for a finding of severe emotional distress.

We now turn to the issue of whether the trial court's statement, "a tort has been committed, . . . invasion of privacy" is sufficient to sustain the court's award of damages. Neither of the plaintiffs' original declarations, in their writs of summons, made a claim for invasion

of privacy. Indeed, in response to motions to dismiss, filed by the defendant in both actions, both plaintiffs stated that "this tort action is one involving intentional infliction of mental distress."

The defendant then filed a request for a more particular statement and specifications from the plaintiffs. The plaintiffs objected generally, on the basis that the allegations in the writ were as particular as they could be, and made no claim as to invasion of privacy. The defendant then filed motions for summary judgment in both actions, after propounding interrogatories to both plaintiffs, asserting that if the tort of intentional infliction of mental distress is recognized, then the plaintiffs must prove that they suffered "severe" emotional distress. The two plaintiffs objected to the motions for summary judgment, and for the first time stated, "[t]he allegations of the Plaintiff[s] also constitute a claim for invasion of privacy." They did not, however, move to amend their declarations.

The defendant objected to these new claims for invasion of privacy on the basis of surprise, and moved for dismissal of these claims as a matter of law. *See Hamburger v. Eastman*, 106 N.H 107, 206 A.2d 239 (1964). The trial court then ruled on May 1, 1990, in a document in which both cases were listed on the heading, that the "Motion to Dismiss as to invasion of privacy is granted." The trial of the plaintiffs' portion of the case took place on May 24, 1990. The defendant's case was later presented on June 18, 1990, and the trial court issued its order that day. The court's order resurrected the "invasion of privacy" claim that had been previously dismissed before trial.

██ It is well settled that a "defendant is entitled to be informed of the theory on which the plaintiffs are proceeding and the redress that they claim as a result of the defendant's actions." *Morency v. Plourde*, 96 N.H. 344, 346, 76 A.2d 791, 792 (1950). In this case, the defendant was entitled to have the case tried and decided on the grounds alleged by the plaintiffs and narrowed by the trial court's dismissal of the new theory of invasion of privacy, which was advanced only after the original declaration. The trial court erred in grounding its decision in part on a theory of invasion of privacy.

It is undoubtedly correct that "[i]t is probably no exaggeration to say that in no state is pleading treated more liberally and regarded as less of a game than in this jurisdiction," *Morency supra*. However, contestants in a law suit, or in a game, must be bound by a set of rules. The most basic of these rules is that the rules cannot be changed in the middle of the contest. Since this contest began without invasion of privacy being a theory before the trial court, to resur-

rect that theory after the trial would be grossly unfair to the defendant. For that reason, the judgment is reversed.

*Reversed.*

All concurred.