USCA1 Opinion

 

 December 9, 1992 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-1624 FERDINAND NWANKWO, Plaintiff, Appellant, v. KIMBERLY NWANKWO AND EDWARD MITCHELL, Defendants, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ ___________________ Ferdinand Nwankwo on brief pro se. _________________ Edward M. Kaplan, Sean M. Dunne and Sulloway & Hollis on ________________ ______________ __________________ brief for appellees. ___________________ ___________________ Per Curiam. This case involves two conflicting state ___________ court child custody decrees. After a bench trial, the district court dismissed one of plaintiff's claims against defendant Kimberly Nwanko on jurisdictional grounds, and the others for failure to prove a claim. The claims against defendant Edward Mitchell were dismissed on the merits. As we have concluded that all claims against Kimberly Nwanko should have been dismissed for lack of subject matter jurisdiction, we partially reverse and vacate the judgment below, remanding for entry of a dismissal in accordance with this opinion. We affirm the dismissal on the merits of the claims against Edward Mitchell. Plaintiff was awarded physical custody of his two children by a temporary decree from a New Hampshire court in April, 1990. At the time of this order, his wife, defendant Kimberly Nwanko, and the children were residing in Florida. A few months later, a Florida court awarded custody of the children to Kimberly Nwanko, rejecting the New Hampshire court's decree on the ground that it had been issued without jurisdiction over the children. Plaintiff subsequently obtained a permanent custody and divorce decree from the New Hampshire court. Kimberly Nwanko did not appear in the New Hampshire action. Although plaintiff had appeared specially in the Florida action to seek recognition of the New Hampshire custody decree, he did not pursue a direct appeal. Instead, he returned to New Hampshire and filed a complaint in federal district court against Kimberly Nwanko and her father, Edward Mitchell. The complaint claimed that the federal court had jurisdiction by virtue of the Parental Kidnapping Prevention Act, 18 U.S.C. 1738A ("PKPA"). It sought an injunction enforcing the New Hampshire custody decree and an unspecified amount in damages for interference with plaintiff's parental rights, emotional distress, and expenses in seeking custody of his children. After the complaint was referred to a magistrate who issued a "report and recommendations," plaintiff amended his complaint. In an apparent attempt to cure the original complaint's jurisdictional defects, the amended complaint made no mention of the PKPA nor injunctive relief. Instead, it alleged diversity jurisdiction only, and sought damages above the jurisdictional amount for three state law tort causes of action against both defendants: intentional interference with parental custody, intentional infliction of emotional distress, and a claim of uncertain legal origin, seeking reimbursement for the support and care of Fawn Mitchell, Kimberly Nwanko's child by a prior relationship. By motion shortly thereafter, however, plaintiff renewed his request for an injunction under the PKPA. And in later pre- trial and post-trial motions and responses to motions, plaintiff requested that the district court enforce the New Hampshire custody decree by virtue of either or both its federal question and diversity jurisdiction. -3- As the district court held, there was no basis for original subject matter jurisdiction over the PKPA claim under 28 U.S.C. 1331, because the PKPA does not provide an implied private federal cause of action to determine which of two conflicting state custody decrees is valid. Thompson v. ________ Thompson, 484 U.S. 174, 182, 186 (1988). The PKPA is addressed ________ to the States and state courts. Congress did not intend thereby to entangle the federal courts in traditional domestic relations questions that "they have little expertise to resolve." Id. at __ 186 n.4. If plaintiff felt aggrieved by the Florida orders, his remedy was to appeal through the state courts. Id. at 187 ("State __ courts faithfully administer the Full Faith and Credit Clause every day ... we can think of no reason why the courts' administration of federal law in custody disputes will be any less vigilant;" but the Supreme Court is available for ultimate review of "truly intractable" deadlocks). Nor was there subject matter jurisdiction to enforce the New Hampshire custody decree under the diversity of citizenship statute, 28 U.S.C. 1332. Ankenbrandt v. Richards, 112 S. Ct. ___________ ________ 2206 (1992). Ankenbrandt, decided after the lower court issued ___________ its opinion in this case, reexamined the theoretical underpinnings of the "domestic relations exception" to diversity jurisdiction first articulated by the Supreme Court in Barber v. ______ Barber, 62 U.S. (21 How.) 582, 16 L. Ed. 226 (1859). The Court ______ determined that, given the long passage of time without any -4- expression of Congressional dissatisfaction, the exception is now rooted in the diversity statute itself. Ankenbrandt, 112 S. Ct. ___________ at 2213. As reaffirmed by the Court in Ankenbrandt, the "domestic ___________ relations exception" is a narrow one. In order to assure decisions by those with the greatest judicial expertise and the resources to enforce them, the exception "divest[s] the federal courts of the power to issue divorce, alimony and child custody decrees." Id. at 2215. But federal courts retain jurisdiction __ over cases involving intra-family torts, unless abstention is otherwise required by the Younger or Burford abstention doctrines _______ _______ to avoid interference with pending state proceedings, important and difficult questions of state policy, or effectuation of state decrees. Id. at 2216; see Younger v. Harris, 401 U.S. 37 (1971); __ ___ _______ ______ Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987), cited by Court ____________ ____________ as among authorities extending Younger abstention to civil cases; _______ Burford v. Sun Oil Co., 319 U.S. 315 (1943); Colorado River Water _______ ___________ ____________________ Conservation Dist. v. United States, 424 U.S. 800, 813 (1976), __________________ _____________ cited by Court for basic abstention principles. In Ankenbrandt, the domestic relations exception was held ___________ inapplicable to a claim seeking damages against a father and his companion for alleged child abuse. The claim there only peripherally touched on domestic relations issues because the plaintiff "in no way" sought the issuance of a divorce, custody or alimony decree. Ankenbrandt, 112 S. Ct. at 2215. Nor were ___________ -5- there any issues of status to be resolved that might interfere with effectuation of a state court decree. Id. at 2216. __ By contrast, here plaintiff's real aim, as stated in his original complaint, was to obtain direct enforcement of one of two conflicting state court custody decrees. Thus there was no subject matter jurisdiction over the original complaint. Ankenbrandt, 112 S. Ct. at 2215. And although plaintiff ___________ attempted to cure the jurisdictional deficit by filing an amended complaint seeking only damages, the inherent infirmity of the state tort claims pleaded in that document belied the pleading's genuineness as a predicate for jurisdiction.1 If there was any doubt, the real purpose of this suit quickly reappeared in the contradictory relief plaintiff sought by motion. Because plaintiff appeared pro se and the facts were ___ __ somewhat murky, the district court liberally construed his pleadings and motions. And the defendants apparently never ____________________ 1. From the outset, it was a legal impossibility for plaintiff to succeed on these state law claims, because, as he admitted, there was no custody decree in his favor when defendant Kimberly Nwanko moved with the children to Florida. At least one essential element of the claim was thus always missing, although the language of the complaint tended to obscure the temporal sequence of events. Plante v. Engel, 124 N.H. 213, 217, 469 A.2d ______ _____ 1299, 1302 (1983) (tort claim for "interference with parental custody" lies "where a parent has been awarded custody of a child by a court decree and the noncustodial parent abducts the child"); Morancy v. Morancy, 134 N.H. 493, 593 A.2d 1158 (1991) _______ _______ (tort claim for intentional infliction of emotional distress requires showing of "outrageous" conduct). While plaintiff may have believed that the state law should be changed, that question, too, was beyond the competence of the federal court in a diversity case. -6- objected for lack of subject matter jurisdiction. But even when the parties are content to have the case decided on the merits, where the suit's transparent purpose is to embroil the district court in a dispute involving conflicting custody decrees, the suit must be dismissed for lack of subject matter jurisdiction.4 See Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 382 ___ _______________________________ ____ (1884), quoted in Bender v. Williamsport Area Sch. Dist., 475 __________ ______ __________________ __________ U.S. 534, 546 (1985) ("The first and fundamental question is that of jurisdiction ... this question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it"); Louisville & ____________ Nashville R.R. v. Mottley, 211 U.S. 149 (1908) (it is the duty of ______________ _______ appellate court to see to it that lower court's jurisdiction not exceeded, even when parties do not complain). See also Sutter v. ________ ______ Pitts, 639 F.2d 842 (1st Cir. 1981) (under former version of _____ domestic relations exception, case properly dismissed where plaintiff's complaint stated civil rights action but, with its "constitutional cloak removed" actually sought enforcement of probate court's custody order). Accordingly, all claims against Kimberly Nwanko must be dismissed for lack of subject matter jurisdiction. ____________________ 4. The district court seemingly recognized that the case should have been dismissed earlier. In ruling on a post-judgment motion several months later, it described the dismissal of the claims against Kimberly as "in essence" for lack of jurisdiction, and the dismissal of the claims against Edward Mitchell as "in essence" on his motion for summary judgment. -7- The claims against Edward Mitchell, however, stand on a different footing. Those claims do not seem to have inevitably involved resolution of the parties' status, enforcement of any custody decree, nor interference with any pending state proceedings. They were thus were not barred for lack of subject matter jurisdiction by the domestic relations exception or related abstention doctrines. Ankenbrandt, 112 S. Ct. at 2215. ___________ Under state law, however, they, too, were apparently infirm from the outset, and might properly have been dismissed on a motion for failure to state a claim or, as the district court later said, on a motion for summary judgment. The factual findings underlying the court's conclusion that plaintiff had not sustained his burden of proof against defendant Edward Mitchell were not clearly erroneous. Fed. R. Civ. P. 52(a); DesRosiers v. __________ Moran, 949 F.2d 15, 19 (1st Cir. 1991). We have considered _____ plaintiff's other assertions of legal and factual errors in the disposition of these claims and find them without merit. We therefore affirm the judgment dismissing the claims against Edward Mitchell on the merits. The judgment dismissing plaintiff's claims against Kimberly Nwanko is reversed, vacated and remanded for entry of a ________ _______ ________ dismissal on the grounds of lack of subject matter jurisdiction. The judgment dismissing plaintiffs' claims against Edward Mitchell is affirmed. ________ -8-